## Marr *vs* Smith.

APPEAL FROM THE HICKMAN CIRCUIT.

*Assignor and assignee.   Consideration.   Diligence.*

JUDGE BRECK delivered the opinion of the Court.

*October* 21.

THIS was an action of assumpsit, brought by Smith against Marr, as the assignor of three notes to Smith, and which, as he alledges, after using due diligence, he has been unable to collect. Smith obtained a judgment for four thousand five hundred and four dollars 50 cents, the amount of the assigned notes, interest and costs, and Marr has appealed to this Court.

Case stated.

The declaration contained various counts, to which the defendant filed demurrers, and a plea of non-assumpsit. The demurrers were all overruled, and we are not satisfied that the Court erred in thus disposing of them.

The main questions presented upon the merits for consideration, are:

1st. Whether the assignments of the notes by Marr were made upon a sufficient consideration to render him in any event responsible.

2d. If the consideration for the assignments should be deemed sufficient, whether Smith has used such diligence for the collection of the notes from the obligor, as entitle him to a recovery.

The first question arises upon the following state of fact, or upon testimony conducing to establish it:

Smith being the holder of claims upon Lansdale & Co. and Belknap, &c., who had been engaged in business in the county of Hickman, and with the settlement of whose affairs Lansdale seems to have been charged, sent his agent to that county to procure payment or other satisfactory arrangement. Lansdale owning a house and lot in Mills' Point, offered the same in payment of the claims. This offer was declined, but it was proposed, if Lansdale would sell the property upon a credit of one, two, three and four years, and obtain notes therefor, with good se-

Facts appearing in proof.

HARVARD LAW SCHOOL LIBRARY

curity, that the notes to that extent, would be received in discharge of the claims. The property was accordingly sold to one Farmer, who executed his four several notes to the defendant, Marr, payable annually in four years, for $1,250 each, and these notes were endorsed or assigned by him to the plaintiff, Smith. The notes were all drawn, endorsed and delivered at the same time, and the testimony conduces to prove that all this was done with the knowledge and consent of Marr, and that the notes were received in discharge of Smith's claims upon Lansdale, upon the faith of the endorsements by Marr, which purport to have been for value received. · Marr appears to have objected to becoming bound upon the face of the notes, but agreed that they should be made payable to him, and that he would endorse them. Under these circumstances, the notes were received by Smith in discharge of his claims upon Lansdale & Co.

The surrender of a claim to a debtor by a creditor, is a good consideration for an assignment of a note, whether the surrender be to the assignor or to a third person.

In view of these facts, the position contended for by consel, that the endorsements thus made by Marr, were without consideration, and imposed upon him no liability, cannot, in our opinion, be sustained. It was not essential to his liability, that any consideration should have passed from Smith to him. The surrender by Smith of his claims upon Lansdale & Co., was a sufficient consideration. The assignments were a part of the *res gesta*, and Marr obviously intended by that mode to become responsible for the ultimate payment of the debt.

The principle settled by this Court, in *Allen* vs *Prior*, *&c.*, (3 *Marshall*, 305,) is, we think, conclusive of the question.

There is nothing in the case of *Perrin* vs *Broadwell*, (3 *Dana*, 598,) as contended, inconsistent with this view of the case; but on the contrary, the doctrine is there recognized, which we think is applicable to this case. It is perfectly evident that the notes of Farmer were not to have been received, and would not have been received, in discharge of the claims of Smith upon Lansdale, without the endorsement of Marr, and that with a full knowledge of this fact, he endorsed them. We do not perceive, therefore, that the Court below ruled the law erroneously upon this branch of the case.

The material facts upon which the second question mainly depends, are the following:

The first of the four notes seems to have been collected; at any rate it is not now in controversy.

The three notes now in question, fell due the 21st of January, 1841, 1842 and 1843. Suit upon the first was brought in time for a judgment at the first term after it fell due. The petition appears to have been filed on the 20th March, 1841, and process issued on the same day. The officer returns that he served it on the 1st March, 1841. Whether the date of the service is a clerical mistake, in making out the record, or whether a mistake of the officer in making the return, does not appear. No question in regard to it, however, seems to have been made in the Court below. At the May term of the Court, 1841, the record states, that "the parties appeared by their attorneys, by agreement of whom. ordered that this cause be continued," but at the defendant's costs. At this term no pleas were filed or offered.

At the August and November terms of the Court, of the same year, the case was continued, on the defendant's motion. And at the May term, 1842, the defendant withdrew his pleas, and judgment was rendered for the plaintiff.

Upon the second and third notes, judgments were obtained at the first terms after they severally became due.

Upon the two first judgments, executions issued on the 12th day after their rendition, and were put in the hands of the officer on the 13th.

Upon the judgment upon the third note, execution issued and was put into the hands of the officer on the 17th day after the judgment was rendered. The executions were all returned *no property found*. Two of them were returned some time before the return day, the other upon the return day.

Upon this state of fact, the Court instructed the jury, "that in the commencement and prosecution of the several suits, the plaintiff had used due diligence in all the steps taken, up to the time of suing out the several executions and placing them in the hands of the Sheriff."

This instruction, as the record now stands, we think, was unauthorised and erroneous. The rule is well settled,

To secure recovery by the assignee against the assignor of a note, suit must be brought to the first term after the note falls due. So a voluntary and gratuitous consent to the continuance of a cause by the plaintiff, brought on an assigned note, though brought in proper time, will forfeit his recourse against the assignor.

A delay to issue execution upon a judgment upon an assigned note for seven days after it might have issued, wholly unaccounted for, is a forfeiture of recourse against the assignor. (3 *B. Monroe*, 416.)

that an assignee must bring suit to the first term after the note becomes due, to entitle him to recourse upon the assignor, or in other words, that a failure to sue at the first term would, *prima facie*, be conclusive as to a want of due diligence. So in this case, a purely voluntary and gratuitous agreement on the part of the plaintiff to continue the cause, would in effect, be the same thing as a failure to bring the suit, and must be equally fatal and conclusive upon the question of diligence. There is nothing in the record to show any necessity or sufficient reason for this agreement, to continue the cause instead of taking a judgment at the first term. The instruction, therefore, as to the case in which there was this consent continuance, was clearly erroneous.

But again, it is insisted that a delay of seventeen days, to issue execution upon the judgment upon the third note, was such a want of diligence as should exonerate the assignor. This was a delay of seven days after the execution could legally have issued, which was held by this Court in *Baird* vs *McElroy's administrator*, (6 *B. Monroe*, 416,) the delay being wholly unaccounted for, to be a want of due diligence. To that opinion this Court, the Chief Justice dissenting, still adhere; and as there does not appear to have been any explanation or proof whatever, of the cause of the delay in this case, it follows that due diligence, as the record now stands, was not used by the plaintiff in suing out execution upon the judgment upon the third note; and consequently, that the Court erroneously, in that respect also instructed the jury.

The fact that the executions in two of the cases were returned by the officer before the return day, constituted no obstacle to the plaintiff's recovery, but such return was equally evidence of insolvency as if made on the return day.

To require the assignee to use extraordinary vigilance in suing out an execution, the fact of the necessity of using such vigilance to save the debt, should be within his knowledge, and hence the fourth instruction moved by the defendant, we think, was properly refused.

No other error, in either giving or refusing instructions, than those indicated, is perceived.

The judgment is reversed and the cause remanded, that a new trial may be granted.

*Harlan & Craddock* and *Cates & Lindsey* for appellant; *Fry & Page* for appellee.